UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:23-CV-78-CRS

PRESTON ALAN WETTSTEIN                                                                                    PLAINTIFF

v.

MEDICAL CENTER OF BOWLING GREEN, *et al.*                                                DEFENDANTS

### MEMORANDUM OPINION & ORDER

On June 14, 2023, plaintiff Preston Alan Wettstein filed this *pro se* 42 U.S.C. § 1983 prisoner civil rights action. DN 1. Simultaneously, Wettstein petitioned the court for leave to proceed *in forma pauperis*. DN 2. The court granted Wettstein leave. DN 10. This matter is now before the court on initial review of Wettstein's Complaint pursuant to 28 U.S.C. § 1915A and for consideration of Wettstein's Motion for appointment of counsel. DN 16. For the reasons stated below, the court will deny Wettstein's Motion and dismiss his Complaint in its entirety.

### I. Motion to Appoint Counsel

Wettstein moved for appointment of counsel. DN 16. As grounds for his Motion, Wettstein explains that his discovery efforts have been futile, that he lacks "lawsuit experience," and that the law library at his institution is deficient. *Id.* at PageID# 75.

"Appointment of counsel in a civil case is not a constitutional right." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). That is so because "the Sixth Amendment does not govern civil cases." *Turner v. Rogers*, 564 U.S. 431, 441 (2011). Accordingly, "there is no right to counsel in prisoner civil rights cases" like this one. *Bennett v. Smith*, 110 F. App'x 633, 635 (6th Cir. 2004).

Nonetheless, under 28 U.S.C. § 1915(e), the "court may request an attorney to represent any person unable to afford counsel." Such decision is "within the discretion of the trial court," *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987), and "is a privilege that is justified only

by exceptional circumstances." *Lavado*, 992 F.2d at 606. "To determine whether these exceptional circumstances exist, courts typically consider 'the type of case and the ability of the plaintiff to represent himself.'" *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (quoting *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987)). Generally, such tasks the district court with determining the "complexity of the factual and legal issues involved." *Lavado*, 992 F.2d at 606.

Wettstein's Motion will be denied for a few reasons. First, the court notes that this case – having yet to undergo initial review – is not in its discovery stage. Indeed, the defendants have yet to be served because this court has yet to issue summonses. Thus, Wettstein's perceived problems with discovery are non-issues. Second, neither Wettstein's status as a layman at law nor the deficiency of his institution's law library constitute circumstances different than those of other incarcerated plaintiffs. *See, e.g., Stewart v. United States*, No. 2:13-cv-2896-STA, 2017 WL 939197, at *1 (W.D. Tenn. Mar. 7, 2017) (appointment of counsel unwarranted where "[n]othing distinguishes" the "case from the numerous other petitions filed by indigent prisoners"). Third, upon review of Wettstein's Complaint, the court finds that the issues are not of sufficient complexity to warrant appointment of counsel. Fourth, a review of all documents filed by Wettstein reveal that he is sufficiently articulate and able to present his case to the court. For all these reasons, the court finds that Wettstein has not set forth any exceptional circumstances warranting appointment of counsel. Thus, his Motion will be denied.

## II. Initial Review

### A. Legal Standard

Because Wettstein is a prisoner seeking relief against governmental entities, officers, and/or employees, the court must initially review the instant action. *See* 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds*, *Jones v. Bock*, 549 U.S. 199, 203 (2007). Upon review, the court may dismiss a case at any time

if the court determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). When screening the Complaint, the court must construe it in the light most favorable to Wettstein and accept well-pleaded allegations as true. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010). And while a reviewing court liberally construes *pro se* pleadings, *see id.*; *Boag v. McDonald*, 454 U.S. 364, 365 (1982), a complaint must include "enough facts to state a claim to relief that is plausible on its face" to avoid dismissal, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B. Wettstein's Complaint

The following facts are gleaned from a review of Wettstein's Complaint and its accompanying exhibits: Bowling Green Police Officer Matthew Poore was dispatched to the Medical Center of Bowling Green ("Medical Center") on report of a man sitting "on the ground with no clothes on." Complaint, DN 1-1 at PageID# 7. That man was Wettstein. He had "slurred speech and constricted pupils." *Id.* Medical Center EMS assessed Wettstein and determined his vitals were "within normal levels." *Id.* Wettstein was then placed in custody for public intoxication and second-degree disorderly conduct. *Id.* He was transported to Medical Center's emergency room for medical clearance before transfer to a jail facility.

While in the emergency room, "Wettstein began to scream and yell" and, after Medical Center staff attempted to obtain a blood sample from him, he "became upset." *Id.* Office Poore and Medical Center security "had to hold Wettstein down" and place Wettstein in restraints "to prevent Medical Center staff from being injured" *Id.* Such resulted in injury of a Medical Center security staff member, for which Wettstein was charged with fourth-degree assault (no visible injury). *Id.* at PageID# 7–8. In a supplemental citation, Officer Moore also reported that he suffered

a small laceration to his index finger that "caused pain and a small amount of blood." *Id.* at Page# 10. In the end, Wettstein was medically cleared and transferred to the Warren County Regional Jail ("WCRJ"). *Id.*

Thereafter, Warren District Judge Kimberly Geoghegan issued a warrant that directed Wettstein's blood be drawn and tested for communicable diseases pursuant to KRS § 438.250.[1] *Id.*; *see also id.* at PageID# 11. Nurse Kayton Willis, a "jail nurse", drew Wettstein's blood for testing – Wettstein's second blood draw. The sample returned positive for Hepatitis C. *Id.* at PageID# 10. Wettstein alleges that Officer Moore lied to Judge Geoghegan to secure the blood draw warrant. *Id.* at PageID# 4.

As a result of these interactions, Wettstein sues Medical Center in its official and individual capacities, the Bowling Green Police Department ("BGPD") in its official capacity, Southern Health Partners in its official capacity, and Officer Matthew Poore in his official capacity for alleged violations of the Fourth and Fourteenth Amendments. *Id.* at PageID# 5–6. Specifically, Wettstein alleges that Officer Moore "stole" his blood with the help of Medical Center staff – subjecting him to a warrantless search and cruel and unusual punishment – and that he "was

---

[1] KRS § 438.250(1) requires the following:
> When a public servant, as defined in KRS 521.010, a health care professional who is licensed or certified under the laws of the Commonwealth, an employee of the health care professional, an employee of a health care facility that is licensed under the laws of the Commonwealth, or victim of a crime is bitten by, suffers a puncture wound caused by, or is exposed to the blood or body fluids of a criminal defendant, inmate, parolee, probationer, or patient or resident of any health facility owned or operated by the Commonwealth, or the blood or body fluids of a criminal defendant, inmate, parolee, or probationer have come into contact with the skin or unprotected clothing of a public servant during any incident in which the public servant and the criminal defendant, inmate, parolee, or probationer are involved, the criminal defendant, inmate, parolee, or probationer shall be ordered to submit to testing for human immunodeficiency virus (HIV), hepatitis B and C viruses, and any other disease, if testing for that disease is recommended by the most current guidelines of the Centers for Disease Control and Prevention, and if testing for any of these conditions is recommended, then testing will be conducted as recommended by the Centers for Disease Control and Prevention.

restrained, lied too [sic] repeatedly, and charged falsely." *Id.* at PageID# 5. Moreover, Wettstein alleges that Medical Center and Southern Health Partners each drew his blood without his consent and declined to provide him with water. *Id.* at PageID# 5–6. Wettstein seeks $15,000 in compensatory damages and $400,000 in punitive damages from Defendants. *Id.* at PageID# 6.

### C. Analysis

In a § 1983 action, a plaintiff must allege that a person acting under color of state law — that is, an employee or agent of a state or municipal government — subjected the plaintiff to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C § 1983.

Thus, to maintain a § 1983 action, a plaintiff must show that the defendants acted under color of state law. Here, Wettstein sues Medical Center in its official and individual capacities, among other defendants. DN 1 at PageID# 2. However, Medical Center is a private hospital. Consequently, it is not a state actor.

There are some circumstances in which a private actor may be deemed to have acted under color of state law. *Brentwood Academy v. Tennessee Secondary School Athletic Assn.*, 531 U.S. 288, 295 (2001). However, that is the case only if "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974)). Wettstein does not allege any facts supporting such a nexus here. Thus, Wettstein fails to assert a cognizable § 1983 claim against Medical Center.

Wettstein's remaining claims are against BGPD, Southern Health Partners (which Wettstein alleges is the WCRJ's contracted medical provider), and Officer Matthew Poore — all in their official capacities. Suing an individual or entity in its official capacity is the same as suing

a local government, like Warren County. *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978). To state a cognizable official capacity claim against each defendant, then, Wettstein must allege that each defendant had a policy or custom which resulted in his being deprived of a constitutional right. *Id.* at 690–91. This requirement exists because a local government cannot be, as a matter of law, liable for their employees' actions simply as a result of their employment status. *Id.* at 691.

Wettstein's Complaint does not identify a policy or custom of Southern Health Partners that resulted in his suffering a constitutional deprivation. *See* DN 1 at PageID# 5. Instead, he simply sues Southern Health Partners for "stealing" his "blood without a warrant while in a restraint chair" and for "refusing water." *Id.* Thus, Wettstein's Complaint fails to state a § 1983 claim against Southern Health Partners.

As to BGPD and Officer Poore, Wettstein vaguely alleges that BGPD "repeatedly" trains its officers, like Officer Poore, to abuse their power and inflict cruel and unusual punishment. *Id.* However, he does not identify the purported policy or custom. Instead, Wettstein states that "the evidence of this is disgusting" and that he would "rather this settle without having to pull off that band aid." *Id.* Wettstein's vague assertion as to the existence of a policy or custom is insufficient to state a claim to relief against BGPD or Officer Poore under § 1983.

### III. Conclusion

For the reasons expressed in section I above, Wettstein's Motion for appointment of counsel, DN 16, is **DENIED**.

Additionally, for the reasons expressed in section II above, Wettstein failed to state a cognizable § 1983 claim against any named defendant. Accordingly, Wettstein's Complaint will be dismissed in its entirety for failure to state a claim upon which relief may be granted. 28 U.S.C.

§ 1915A(b)(1). A separate Order will be entered contemporaneously with this Memorandum Opinion.

Finally, Wettstein was previously ordered to pay the statutory filing fee of **$350.00** under an installment plan. DN 10. Although this action will be dismissed, Wettstein remains obligated to pay the filing fee in full. *McGore*, 114 F.3d at 605 ("We conclude that by *filing* the complaint or notice of appeal, the prisoner waives any objection to the fee assessment by the district court.") (emphasis added). Accordingly, the court's prior **Order, DN 10, directing the Warren County Regional Jail** to send to the Clerk of Court monthly payments from Wettstein's trust account each time the amount in the account exceeds $10.00 until the statutory filing fee of $350.00 is paid in full **remains in full effect.**

**IT IS SO ORDERED.**

March 27, 2024

Charles R. Simpson III, Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
      Warren County Regional Jail